The next case for argument is 19-1045, Anza Technology v. Mushkin. I think we're ready to go. Mr. Springer, good morning. Good morning, Your Honors, and may it please the Court, Colby Springer for the appellant, Anza Technology. The United States District Court, the District of Colorado, erred in dismissing Anza Technology's Second Amendment complaint under Federal Rule 12b-6. Mr. Springer, before you get into the merits of your argument, I'd like to have your views as to what the standard of review is. Now, in your brief, you talked about the standard of review as being de novo because this is a 12b-6 dismissal. Correct, Your Honor. But the way other courts have looked at this, and I think probably the correct way to look at it, is not to say that, well, it's a 12b-6 dismissal and therefore that's the end of the matter, but rather to say what we're talking about is a question of whether relation back under Rule 15c is permitted or not. And that is, it seems to me, not the same question as to whether dismissal under 12b-6 is appropriate. So, under looking specifically at the relation back issue, what do you think is the right way for us to look at this, de novo or to give some degree of discretion to the District Court? So, as we said in our brief, this is a 12b-6 motion. I understand that. I really think that that argument misses the point, and the point being that this is a relation back issue that we have to focus on, and it's the relation back component of the dismissal that matters. Even if there had been no dismissal, the dismissal only occurred because of the statute of limitations problem. If there had been no statute of limitations problem and it had just been restricting your proof to less than you would like, then we would be focusing entirely on the relation back issue. So, I think the 12b-6 standard review is a red herring. So, what do you think about the right way to look at a 12b, at a 15c relation back issue? So, I respectfully disagree that it's a red herring. I understand you do. So, let's move on. With respect to the 15c issue, I think you can still incorporate that issue and that consideration into the context of the motion to dismiss as a whole. But let's say for the sake of argument that we do apply a Rule 15 standard, abuse of discretion. And again, as was identified in the appellee's brief, I believe that's the incorrect standard with respect to the appellee's brief. Okay, why is it incorrect? Because we're not looking at whether the case law cited and relied upon by the appellee with respect to the application of Rule 15c, all concerned – none of those concerned a motion to dismiss for starters. And for second, they all concerned whether it was proper to deny – the cases relied upon whether it was proper to deny leave for motion to amend. Leave to amend was expressly granted by the District Court of Colorado. So, in that sense, I don't believe the abuse of discretion standard is appropriate. Notwithstanding that, let's say the court here says today, you say, Judge Bryson, here today, we're adopting an abuse of discretion standard. We still believe – ANSA still believes that the record is very clear that an abuse of discretion and clear error did occur. So regardless of which standards you apply – and again, we obviously believe it's the de novo review standard. But even if you were to apply the more stringent abuse of discretion, we believe that the factual record indicates clear error by the District Court below. In that context – Could I ask one other preliminary question? I think you get to ask whatever you want. But this really goes to the merits. And that is in the initial complaint where you raised the 927, I guess. You concluded and told the district court that the – that claim was nonviable. What was the reason that your claims under the 927, in your view, failed? It wasn't so much an issue that the claim failed. It was during the course of a mediation, and then – so there was the case was filed in the eastern district of California. An original motion to dismiss was filed. It was transferred to Colorado. And prior to the district court in Colorado considering the motion to dismiss that came over with it from California, parties went to mediation. During the course of mediation, a declaration was provided. Right. We're familiar with all that. And so in that context, that declaration – What was it about the declaration or any other circumstances that led you to believe that you could not prove infringement under the 927? It was less an issue of we could not prove infringement under the 927. It was the evidence or the admissions made in the course of that declaration opened up the case wide open for these other two patents and made it a clear-cut case that we thought, quite frankly, the – ANSA thought the case could proceed immediately to summary judgment based on largely those admissions alone. Those admissions were so stark and so black and white that, quite frankly, the contention was that Mushkin had provided ANSA with a better case than existed under the context of the 927. But presumably, you could have left the 927 in the case and just added the others, but you chose not to do that. We chose not to do that. And my question is why? Because the case made it much easier with the 864 and the 479. Did the fact that the 927 refers to a flip chip bonding tool in the claim, did that influence your decision not to pursue the 927? It made it easier. This goes back to, again, the declaration and the statements in the declaration. Again, and keep in mind, this declaration was provided in the context of mediation. And then, again, after the fact, so it felt outside the scope of any 408 discussion. This declaration was, quite frankly, the only evidence of record. Keep in mind there was no discovery of any sort conducted in the district court proceeding, nor is there any opportunity to cross-examine the declarant of that declaration. So taking that declaration at its word, that declaration unequivocally stated, and again, taking it at its word with no cross-examination, it said we don't do any sort of flip chip bonding or utilize any flip chip bonding techniques. Here's what we do do. And based on what they said, here's what we do do, that's why we said, okay, let's go to the 864 and the 479. Okay, thank you. So with that in mind, and I think you raised an interesting point, Your Honor. The issue here is the patents and what they cover because this goes to part and parcel in the whole issue of relation back. These are not flip chip versus wire bonding patents. These are dissipative tool patents. ANZA did not invent flip chip bonders. ANZA did not invent wire bonders. ANZA invented dissipative tool tips that could be used in various form factors. They invented dissipative tool tips that could be used in a flip chip bonder or could be used in a wire bonder. Yes, but here's where I have a problem with the relation back theory. And it relates to the flip chip. If it's true that we look to the nature of the conduct, occurrences, and transactions as the rule requires, isn't it important that the initial patent claim that you relied on in your original complaint was directed to a flip chip bonding tool, i.e. the use of this particular tip in a flip chip bonding tool? I think when you look at the transaction occurrence, you look at the product that was accused of infringement. And keep in mind that the allegation of infringement in the original complaint, as well as in the later second amendment complaint, was under the context of 271G, which concerns a product made by a method. And in that context, the product that was accused in the original complaint, as well as in the later complaint, concerned packaged ICs and PCBs, integrated circuits. But if it's true, if it's true that the company wasn't bringing in anything that was used in flip chip bonding, then presumably there would be no such products. Presumably, but you're also making a presumption on the basis of a factual record that does not exist. Again, there was no discovery, and I think this goes back, Judge Bryson, to your original question of what standard do we use? And that's why we believe the NOVO is appropriate here, because keep in mind, we're dealing with the dismissal of a complaint at the pleading stage. And when you look at a motion under 12b-6, you're required to look at the four corners of the complaint. You cannot look beyond the four corners of the complaint but for changing that complaint into a motion for summary judgment. And while Mushkin's motion sought to do that, the court declined to do so and address the case specifically on the issue of 12b-6. So if you look at the context of the complaint itself and nothing but the complaint, we contend that part and parcel under the District Court of Minnesota's 2001 Mann decision was clearly met. So consider this. The invention, again, is dissipative bonding tool tips with certain dissipative qualities. Again, not bonders. This was evident not only in the claim language of the claims that were asserted in the original complaint as well as the amended complaint, all of those being method claims or at least including method claims, and those were identified at the outset, but the specification 2 discusses the invention of being dissipative bonding tool tips. For example, if you look in the 927, at column 3, line 54, column 1, line 10 and 65 of the 479, in column 2, line 8 of the 864, those all refer to the invention as these dissipative bonding tool tips. To be clear, the 927 involves a use case of a flip chip bonding tool tip in the context of flip chip bonding, but the invention remains the flip chip bonding tool tip. Also consider the fact that each of those patents that are asserted, the 927, the 479, the 864, all sought to overcome the issue of electrostatic discharge. Wait, you said the invention remains a flip chip bonding tool tip? No, the invention remains... That's what you said, I believe. I'm sorry, if I said I misspoke. Did you not mean that? The invention remains a dissipative bonding tool tip. Right, but the invention that's described or claimed in the 927 is a flip chip bonding tool with such a tip. You're looking, again, you're looking... I'm looking at the claim you assert. Correct, claim 16. And if you're looking at the preamble, it does involve... 14. 14 is what I'm looking at. 14 is the one you asserted, right? I'm sorry. You gave up on 16. No, that's not correct. So if you look at the original complaint, claim 16 was asserted. Right, but in the infringement contentions, my recollection is that you gave up on 16. You didn't assert 16 in the infringement contentions. Isn't that correct? Two issues here, Your Honor. Well, but let's make sure that's correct or not. To answer your question directly, the infringement contentions at issue did not address claim 16. Okay. So yes, but those claim infringement contentions by the court's own characterization were informal. And the court says that on page... I'm sorry. Informal. And the court characterizes that on page 12 of its own order. Informal infringement contentions. Those informal infringement contentions were produced in advance of a court-ordered settlement conference. In addition to that, again, this is a motion under 12b-6. So regardless of whether the infringement contentions were formal or informal, whatever the court may have meant by that, the fact of the matter is a Rule 12 motion only allows you to consider what is in the complaint or the document specifically integrated thereto. For example, the patents. And those infringement contentions were not a part of the complaint, not referenced by the complaint, not referenced or incorporated by the patents,  All right. Go ahead. So if you take that in mind, each of those patents also seek to overcome the issue of electrostatic discharge. There's also the issue of overlapping inventors, common prior art that can readily be seen on the face of the patents, common examiners, a common family tree with a common base provisional even, and the 927 patent itself is subject to a terminal disclaimer with respect to the 864 and the 479 patents. So it's hard to believe that these patents that are together, bonded together, for lack of a better term, in perpetuity by way of a terminal disclaimer, cannot be considered, quote unquote, part and parcel of one another. And in that sense, what does part and parcel even mean? In the court, we believe looking at the Mann decision, and again, there's no real directive from the Federal Circuit on this, but if you look specifically at the Mann decision, part and parcel, part by its own definition means a piece of. It's not entirety and parcel. It's part. So less than a whole. Parcel means an integrated component. So there's no requirement of identicality or 100% overlap. It's a very subjective standard at the very least. I think I know your answer to this, but in your, again, the infringement contentions, you, it appears, do not assert 271G, but assert 271A, at least reading the language of manufacturers and so forth in the infringement contentions, but you, again, would say, I take it that, but those were informal infringement contentions. You have to look back to the complaint, which does assert 271A and 271G. That is correct. And therefore, the fact that the second amended complaint relies entirely on 271G is not a departure from the original complaint. That is correct. The original complaint, as well as the second amended complaint, both made an infringement accusation under 271G. The original and the amended complaint with respect to each of the three patents all asserted method claims all under the context of 271G. The original and the amended complaint all asserted infringement of products sold by Mushkin under the context of 271G, those products, again, being encapsulated ICs and PCBs. The district court, as well, made an incorrect conclusion in its application of part and parcel, and this goes back to the reference I made to identicality saying, well, there's a slight variation between the original and the amended complaint. That's not true. The accused product is, was, and remains those ICs and PCBs. Now, while specific brand names were identified, keep in mind, brand names don't infringe a patent. It's the product underlying it. And the product underlying it are those, again, ICs and PCBs. And if you look at the language of the complaint, as well, as well as the second amended complaint, those brand names were not identified exclusively. They were inclusive at the very least. The two products that are brand names that you added in the second amended complaint, do those represent different products, or are they simply different names for the same products? They are, again, Or is that unresolved? It's unresolved to some degree in the sense that there was, again, no discovery. So the assertions, and again, the informal infringement contention, were based on a public record that was sketchy at best and involved, quite frankly, a lot of use of the Wayback Machine. So the information available, because these product sales did end in April 2012, was limited. And I see I've run out of time, but if I may finish the answer to your question. The issue does remain that the accused product remained the same. The brands, there was overlap of the brands. Certain brands were dropped between the original complaint and the second amended complaint. But again, it was specifically identified with respect to those accusations being inclusive, not inclusive. So for the court to impose this identicality requirement, I think is an overly stringent application of part and parcel, whatever that may ultimately mean, but also in the context of Rule 15C. May it please the Court. Scott Hemingway for Apelli, Mushkin. Judge Bryson, I think you asked a lot of the same questions I was going to cover. You have a lot of the same grounds that I was going to cover. Can you start by telling us what the right standard of review is? And I have to say that, while I was critical of your opposing counsel for relying on 12B6, I thought that your references to the Datascope and Fromson cases was not helpful because it didn't really grapple with the relation back standard of review. Which a number of courts have talked about, but nobody cited any of those decisions, or at least we didn't cite many of them. So with respect to, I believe it is the abuse of discretion standard, Your Honor. This is a... You are familiar with, at this point perhaps, that there are a lot of cases that have said the contrary, that have said it's de novo. For Rule 15C? For Rule 15C determinations. I didn't find any of those cases, Your Honor. Okay, well. I cited those cases that I found, which indicated that you should give some discretion on relation back. Did you find any that actually relate to relation back, as opposed to Datascope and Fromson? I was aware of those. I believe those are as relevant as I found, Your Honor. Okay. But I think the issue as far as whether it's a 12B issue or a Rule 15 issue is resolved almost by the question presented. The question presented in this appeal says it's a Rule 15 issue. It's a relation back issue. It's not a sufficiency of the allegations issue. And if it's a 12B6 issue, then, and we look at the sufficiency of the allegations, then it would be a de novo. But I found the cases on abuse of discretion that I thought were relevant, Your Honor. And I apologize if I didn't get as much case. Well, that's right. We'll sort it out. But go ahead. The dilemma, I think, that ANZA has put itself into is that during the hearing on the first amendment complaint, they acknowledged that their claims against Mushkin under the 927 pact were non-viable. And then they filed a second amendment complaint, and they've indicated that those are the same claims that they had before, that there's identity or substantial similarity. And if that's the case, then those are equally non-viable as they acknowledge the 927 pact claims were. And if they're not, if they're not the same, if there's some differences there, then they have a real issue with relation back. Do you think, as your opposing counsel has asserted, that the infringement contentions being designated as informal are not binding as effectively amending the complaints? Not at all, Your Honor. Those were not listed as informal. They were not indicated to be informal. We asked for those from the court, and the court instructed them to comply with the District of Colorado's contention requirements. And those were served and signed by counsel, and those were as much discovery as we relied on when we presented the declaration that said, you've given up on 271G on the 927 patent. You only asserted 271A. You've given up on Claim 16. You're only asserting Claims 1 and 14. And that's what you've given us charts on. That's what the contentions say. We're relying on that. Here's a declaration that says we can't infringe 271A. We can't, because we never had a bonding piece of equipment. We never had a bonding system to infringe the 271A claim. And after that mediation and they had the evidence before it, they acknowledged that the First Amendment, the hearing on the motion to dismiss the First Amendment complaint, that those claims that were remaining in the case, not the 271G, not Claim 16, but only Claim 1 and 14, and Claim 271A at that First Amendment, the motion to dismiss the First Amendment complaint, they acknowledged those are not viable. There's no infringement there. And then the court did grant them leave to go ahead and file a Second Amendment complaint, but that placed the burden on us to file the motion to dismiss. Well, of course, that could have been, assuming that the use of the term nonviable was intended to mean that they were effectively conceiving lack of infringement. That could have been because of the fact that at that point, Claim 14, but post the infringement contentions, was the only remaining claim, if you assume that the infringement contentions are binding. Then that claim did have language requiring that it be in a flip-chip bonding system. And if it's true that none of your products were flip-chip bonding systems, then presumably that would be a reason for nonviability. But that wouldn't necessarily mean that the products themselves and the patent claims were not part and parcel of the same conduct, transactions, or occurrences as is required by Rule 15. So the issue here is, we didn't just say we don't have a flip-chip bonder, therefore we don't infringe the 927 patent. We said we didn't have a bonder. We didn't bond anything. No, but that's where the 271G argument comes in. That's correct. Right, but what it looks to me like the cases say when they look at whether this is conduct, transactions, or occurrences, is they look at the underlying conduct. And the underlying conduct here has to do with the tips, the tips of these bonding devices and whether they operate in a certain way. Why aren't all of these claims then part of the same underlying conduct? Well, first of all, the flip-chip claim limitations that were added during the continuation and parts applications that were added years after the newly asserted patent claims were filed. So you have a flip-chip limitation. You have a solder ball limitation that's added by CIPs. This is new matter. This is entirely new matter. It was added much subsequent to the other two patents. So it's much down the line. And it's different technology. And in this instance, the initial complaints were saying that you, Mushkin, you're doing that bonding. You're doing the bonding under 271A. You have a system and you're doing it. And then on the second amendment, the second complaint they filed, after that first one was dismissed under the acknowledgment of non-viability, the second one came in and said, there's wire bonding that's going on here. It's not flip-chip. There's no flipping around the chip and bonding it to a substrate. There's just simply wire bonding that's going on. And, Mushkin, you're not doing it. It's some upstream manufacturer that's doing it. So it's a change of theory. But there's a lot of cases under Rule 15C that say you can change your theory and you still get relation back as long as the underlying conduct was the same. Yeah, but in this instance, the conduct, the party doing the bonding is totally different. And the type of bonding is totally different. But it's still infringement, just infringement on a different theory. No, I respectfully disagree. It would require entirely different evidence. It would require evidence of what Micron or some other supplier, how they were doing their wire bonding, which has nothing to do with the prior patent claims and the prior allegations in the case. And also, as you noted, there are additional products that they added to the case. And there were products that they took out. There was only one-third of the products remained in the case that were even part of the first one. Well, the products they take out seem to me to be irrelevant. You're always free to just drop some of your claims. So it's really only the two products they added that matter, right? Well, that's still a difference, Your Honor. It is a difference, but a much less... It's going to be some different evidence. And not only that, but it's going to be evidence. We're going to have to find out how Micron or how Toshiba or how somebody else bonded these products. And our sole involvement in the infringement is simply an acquisition. We're in the stream of commerce. So that was what was part of the second complaint. Not that we're doing any bonding activity. Not that we have any bonding activity. Not that we're practicing methods or really conducting anything in the Process Patent Act other than the acquisition and subsequent sale of a product that they indicate was upstream by some other supplier who was bonded according to their method. And that's much different than the claim that they had initially asserted against us, that is, Mushkin, that we had a system and we were using a system to bond something. And that's going to require a significant amount of different discovery and different evidence and different parties involved. The Calzone Europa case dealt with copyrights. But it did have some interesting bootstrap language that I thought if you allow stale claims to be bootstrapped onto fresh claims, then it's going to nullify the statute of limitations. And I think that actually goes one step further, is that in this case ANZA is bootstrapping stale claims onto non-viable claims. And that's their attempt to nullify the statute of limitations. With that, Your Honor. If there's no other questions. We have a sharp disagreement about the nature of the infringement contentions. Can you shed some light on this? Because your opposing counsel says that your characterization of the infringement contentions as merely informal and sort of a need to mediation is inaccurate. I think the court need to go no further than look specifically at the court's order at page 12. The court itself characterized these as, quote, Which order and what? It's on page 12 of the appendix, Your Honor. And the district court specifically states that those contentions were, quote, informal infringement contentions. That is the court's characterization, not mine. And if you look at the course of the record, with respect to Can you tell me where on the page I'm on? Sure. Give me one second, Your Honor. If you look, it's five lines up from the conclusion section, far left-hand side. This is especially true given that ANZA's, quote, But if the district court is going to rely on those infringement contentions, be they informal or otherwise. But in this case, specifically identified as informal contentions prepared in the context of moving into a court-ordered mediation. The court cannot rely on those informal infringement contentions for a motion under 12b-6. The court would have needed to convert the motion into a summary judgment motion, which it did not do despite a request in the actual motion from Mushkin. The court clearly indicates throughout its order that this is a motion to dismiss under Rule 12b-6 and nothing more. And again, that's why we contend, or ANZA contends, this imposes the application of the de novo standard of review. But the whole motion, the reason that it's dismissed is because the statute of limitation wipes out your claims altogether. If the denial of relation back had reduced your infringement time to one day, there wouldn't have been a motion to dismiss. But we would still have to review what the district court did with respect to the relation back under a standard that pertained to the relation back doctrine, right? And it's in its contention regardless. Isn't that true? Yes, you do have to look at the factual record and that isn't the 12b-6 standard. Well, I mean, this is why, again, this is Court A called it a close call and B lamented the lack of clear guidance and this is why this case is before you today. But in that context, again, let's say we use the more stringent abuse of discretion standard. The factual record is very clear. These are dissipative bonding tool patents that have a very specific dissipative rating. If you look at the claim language of each of these patents, they all recite some variation of a dissipative material having resistance low enough to prevent a discharge of a charge to a device being bonded and high enough to stop current flow to damage the device. Now, there's variations amongst the three but that is a common thread amongst all three patents evidencing that these are clearly dissipative tool patents that may be used in different form factors but they still go back to the same underlying conduct the sale of infringing product, PCB and ICB products which, again, remain the same in the original complaint as well as the second amended complaint and that accusation of infringement under 271G which, again, remained in the original complaint as well as the second amended complaint are all still there. All these what-ifs or hypotheticals that the appellee raises they concern discovery that did not happen. They may or may not be true. I can't sit here and tell you one way or the other because discovery never commenced and that, again, goes back to the consideration of the motion under 12b-6, the four corners of the document because that is, quite frankly, all the court had to rely upon and all the court should have relied upon in considering its order before. Going back more specifically with respect to that transaction and occurrence the transaction occurrence, I think, that is not allowed or is prohibited is when you change the entire theory altogether and, again, 271G was there on day one and 271G was there on the day the case was dismissed. Assuming the infringement contentions didn't wipe it out. Assuming the infringement contentions didn't wipe it out which we contend the infringement contentions cannot be considered but that issue aside, if you look at a case like Corotti-Collier that was a case that started off as a patent case and then later sought to bring in an antitrust claim and that is the type of a theory of the type of allegation that 15c says, no, that's not the same transaction or occurrence. These were patent infringement claims alleging infringement of ANZ's dissipative tooltip bonding patents with respect to Mushkin's packaged ICs and PCBs. I have just one more quick question and that is you're correct that the district court referred to the infringement contentions as informal but then in the very sentence in which the district court did that the district court attached weight to the fact that in those informal infringement contentions you dropped claim 16 and considered that as binding. So what are we to make of the fact that the district court concluded that the infringement contentions had the effect of narrowing the complaint? I think that at the very least, Your Honor, gives rise to your clear error. Let's assume you want to apply your higher burden of proof with an abuse of discretion. This was a 12b6 motion and even if we apply a higher standard of abuse of discretion the court cannot look beyond the four corners of the complaint. The case law from the Federal Circuit to the Supreme Court as well as the District Court and the Tenth Circuit is crystal clear. It must look to the pleadings and the reason it must look to and only to the pleadings is discovery never commenced. You cannot be making factual determinations or conclusions based on a factual record that quite frankly does not exist. Thank you. Thank you. We thank both sides for cases submitted.